## **AFFIDAVIT OF SPECIAL AGENT ROBERT MARSHALL**
## **IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Robert H. Marshall, being duly sworn, depose and state:

1.   I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have been employed by HSI since February 2007. I am currently assigned to the Office of the Special Agent in Charge in Boston, Massachusetts. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training in federal narcotics laws and preparing and executing search and arrest warrants. During the course of my employment with HSI, I have participated in numerous investigations relating to narcotics trafficking and smuggling. My training and experience in narcotics enforcement has included identifying cocaine, methamphetamine, heroin, opium, "MDMA" (ecstasy), and marijuana; investigating individuals who possess, sell and transport narcotics; and investigating individuals who conspire to transport and sell narcotics. Prior to my employment as a special agent, I worked as an Intelligence Operations Specialist for the DHS Office of Intelligence and Analysis in Washington, D.C. and as an Officer with U.S. Customs and Border Protection in San Francisco, California.

2. This affidavit is based upon information supplied to me by other law enforcement officers, my personal involvement in this investigation, and my training and experience. In submitting this affidavit, I have not included each and every fact known to me about the investigation, but instead have included only those facts that I believe are sufficient to establish the requisite probable cause.

3. On September 3, 2015, BELKIS ALTAGRACIA ROSARIO ("ROSARIO"), DOB xx/xx/1987, arrived at Logan International Airport in Boston, MA, on JetBlue flight #830 from Santo Domingo, Dominican Republic. ROSARIO, a citizen of the United States, presented herself to the primary Customs and Border Protection ("CBP") Officer for inspection. She was accompanied by two children who were under ten years old.

4. The CBP noted that ROSARIO's passport was issued on August 25, 2015, and that she had traveled to the Dominican Republic on August 28, 2015. Based on ROSARIO's recent procurement of a passport, and the relatively short length of her stay in the Dominican Republic, the CBP referred ROSARIO for secondary inspection.

5. ROSARIO was escorted to the CBP secondary baggage inspection area and was selected for examination by CBP Officer ("CBPO") Christopher Corey. CBPO Corey emptied Rosario's carry-on luggage, and noticed that the suitcase was heavier than he

2

expected. ROSARIO's suitcase was x-rayed. The x-ray revealed an area in the suitcase's lining which appeared to be darker on the x-ray than other sections of the suitcase's lining. Based on the CBPO's training and experience he opined that the darker area might be a concealed substance.

6. CBPOs probed the portion of the luggage where the dark area was observed, and a white powdery substance was retrieved. The substance was field tested, and tested positive for cocaine. The luggage panel was disassembled, revealing one package that appeared to contain a white powdery substance, wrapped in plastic, and then wrapped in a substance that appeared to be black tape and concealed in the luggage. The package was removed from the luggage and placed on a scale. The total gross weight of the package was determined to be 2,395 grams (2.395 kilograms).

7. At approximately 10:04 a.m. I encountered ROSARIO and asked her if she spoke English. She replied that she speaks English. I then provided ROSARIO with her Miranda warnings in English. ROSARIO stated that she understood the warnings, signed a waiver of her rights, and agreed to speak with me without counsel present.

8. ROSARIO stated that a friend of her brother-in-law recently traveled to the Dominican Republic, and said that the brother-in-law had a friend who was paying people to bring money

3

into the United States from the Dominican Republic. ROSARIO said that he told her that the friend would pay her $4,000 in exchange for bringing $10,000 into the United States.

9. ROSARIO stated that she believed that she was bringing money into the United States in her luggage. She further stated that she understood that doing so was illegal, but that she brought the luggage into the United States because she needed money.

10. ROSARIO stated that she applied for a U.S. passport on August 18, 2015. On August 20, 2015, she traveled to the Passport Agency in New York City to ask about the status of the passport. She asked the Passport Agency to expedite her passport.

11. ROSARIO said that she traveled to the Dominican Republic on August 28, 2015. Rosario stated that she was scheduled to return to the United States on September 2, 2015. On September 2, 2015, Rosario met an individual who introduced himself as "Carlos." Carlos stated that she, Rosario, needed to change her return flight because the "money" was not ready and he would pick her up the next day.

12. On Thursday September 3, 2015, Carlos picked up Rosario, brought her to an apartment, gave her a suitcase, and called a taxi to transport her to the airport. Once at the

airport, Rosario stated that she, and her two minor children, boarded the flight to Boston.

13. ROSARIO stated that upon arrival in Boston she was instructed to exit the airport and walk to the curb outside the airport. Rosario stated that she was told an individual would arrive in an automobile at the curb, recognize her, take the suitcase, and pay her $4,000.

14. Based upon the information set forth above, I submit there is probable cause to conclude that on September 3, 2015, ROSARIO knowingly imported merchandise, to wit, cocaine, contrary to law, in violation of Title 18, United States Code, Section 545.

Sworn to under the pains and penalties of perjury,

_____
ROBERT H. MARSHALL
Special Agent
U.S. Department of Homeland Security
Homeland Security Investigations

Sworn and subscribed before me this 3rd day of September 2015.

_____
DAVID H. HENNESSY
UNITED STATES MAGISTRATE JUDGE

5